# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| JERRY CREW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-CV-27 CAS |
| | ) | |
| DEAN MINOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court for initial review of the pro se complaint filed by plaintiff Jerry Crew. (Doc. 1) Plaintiff originally filed his action in the United States District Court for the Western District of Missouri. He was granted provisional leave to proceed in forma pauperis and the matter was transferred to the United States District Court for the Eastern District of Missouri. Having reviewed plaintiff's financial information, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $69.27. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court must dismiss plaintiff's complaint for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of plaintiff's motion to proceed in forma pauperis, he provided an affidavit and a certified inmate account statement. (Doc. 3) The certified inmate account statement shows an average monthly deposit of $346.36. The Court will therefore assess an initial partial filing fee of $69.27, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual

allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is currently an inmate at Moberly Correctional Center in Moberly, Missouri. He has filed this action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint consists of a Court-provided civil rights form, along with several grievances and grievance responses that he has attached as exhibits.[1] He names as defendants Warden Dean Minor, Officer Frank Gittemeier, and Officer Unknown Robinson. Defendants are sued in their individual and official capacities. (Doc. 1 at 6-7).

---

[1] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

Plaintiff states that he is a diabetic and receives insulin injections three times a day. (Docket No. 1 at 7). He alleges that defendants and other prison officials are aware of this medical condition.

On February 7, 2017, defendant Gittemeier was notified that plaintiff was being moved from housing unit #3 to housing unit #2. Plaintiff states that he requested this move. Around 2:50 p.m., Officer Gittemeier approached plaintiff's cell in housing unit #3. According to plaintiff, Officer Gittemeier reported to housing unit staff that plaintiff was lying motionless in his bunk. Plaintiff alleges that Officer Gittemeier "did not have a nurse to check … to determine whether" plaintiff was coherent. Plaintiff states that he was "not coherent at the time of the incident." However, in his Informal Resolution Request ("IRR"), dated February 7, 2017, the same day as the incident, which is attached to the pleadings and incorporated by reference, plaintiff acknowledges that he was seen by a nurse, but that the nurse did not specifically check his blood sugar. (Doc. 1-1 at 3).

Officer Gittemeier ordered plaintiff to move. Plaintiff states he was unable to move. Officer Gittemeier then warned plaintiff that mace would be applied if he did not move. (Doc. 1 at 8). Again, plaintiff claims he could not move. At this point, plaintiff alleges that Officer Gittemeier applied mace to his facial area. Plaintiff states that he "immediately got up" and was escorted to housing unit #2, which is the administrative segregation unit.

Plaintiff alleges that "the defendants outright refused medical assessment and treatment of plaintiff's eyes and face," which he claims were injured from the mace. He also states that wrist restraints were applied to him.

Subsequently, Officer Gittemeier issued a conduct violation report against plaintiff. Plaintiff states that this report was made in bad faith, because Officer Gittemeier had "actual or constructive knowledge that the reported misconduct of plaintiff was untrue."[2]

During the incident in plaintiff's cell, plaintiff alleges that defendant Robinson was "standing in the Rotunda … supporting defendant Gittemeier's attack on plaintiff." Plaintiff asserts that this makes Officer Robinson "just as guilty" as Officer Gittemeier, since "she outright refused to stop" Officer Gittemeier's "attack."

Plaintiff alleges that defendant Minor, the warden at Moberly Correctional Center, "failed to take corrective actions" concerning the above-described incident.

Plaintiff states that defendants' actions constituted excessive force and deliberate indifference to his medical needs. (Doc. 1 at 9). He also claims he was denied the ability to call witnesses or present evidence at his disciplinary hearing. Finally, he claims that defendants' actions constituted state law assault and battery. (Docket No. 1 at 10).

Plaintiff seeks a declaratory judgment that defendants violated his constitutional rights when they used mace on him, pushed him around, placed him in administrative segregation, and denied him due process at his disciplinary hearing. He also requests an injunction ordering defendants to refrain from using mace against him, refrain from "pushing plaintiff around," and refrain from using "other physical force against plaintiff." (Doc. 1 at 11). Finally, plaintiff is seeking total damages in the amount of $55,000.

---

[2] Plaintiff attached the conduct violation report to his complaint. According to Officer Gittemeier's report, plaintiff refused an order to leave his bunk. (Doc. 1-1 at 1). Officer Gittemeier stated that he had a nurse check plaintiff and the nurse found plaintiff to be coherent. Officer Gittemeier again ordered plaintiff to move; again, plaintiff refused, stating "f—k you." Officer Gittemeier stated that he warned plaintiff one last time, and then "applied a burst of pepper spray" to plaintiff's facial area.

5

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants used excessive force against him and then denied him medical care. Having carefully reviewed and liberally construed plaintiff's allegations, the Court must dismiss plaintiff's claims without prejudice for the reasons discussed below.

**A. Official Capacity Claims**

Plaintiff's official capacity claims against defendants Minor, Gittemeier, and Robinson must be dismissed for failure to state a claim. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official … capacities sues only the public employer"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment[3] bars suit against a

---

[3]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Plaintiff alleges that defendants Minor, Gittemeier, and Robinson are employed by Moberly Correctional Center. (Docs. 1 at 1-2). Moberly Correctional Center is part of the Missouri Department of Corrections, which is a state agency of the State of Missouri. As noted above, plaintiff's official capacity claims against each individual defendant are really claims against that defendant's employer. As such, plaintiff's official capacity claims are actually claims against the State of Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacity.

Even if plaintiff's claims were not barred, he has still failed to allege any facts to support official-capacity liability. In order for § 1983 liability to attach to a governmental entity in an official capacity suit, the plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can establish liability in an official capacity suit.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional

7

violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (quoted case omitted).

Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's complaint contains no allegations regarding any of the three methods for establishing the liability of a governmental entity. His factual allegations make no mention of any policy whatsoever, much less an unconstitutional policy. Plaintiff also fails to allege the existence of any unofficial custom. Finally, he has not premised defendants' liability on a deliberately indifferent failure to train or supervise. Such allegations are necessary in order to state an official capacity claim. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of municipal liability claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the

alleged deprivation of plaintiff's rights). Accordingly, for the reasons discussed above, plaintiff's official capacity claims against defendants Minor, Gittemeier, and Robinson must be dismissed.

**B. Defendant Minor**

Plaintiff's claims against defendant Minor in his individual capacity must be dismissed. Vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). This means that a prison official, such as a warden, may not be held liable for the constitutional violations of subordinates on a respondeat superior theory. *See Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007). Instead, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury).

The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of constitutional rights. *Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005); *see also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) ("A supervisor may be liable under § 1983 if he (1) received notice of a pattern of

9

unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts").

Plaintiff does not allege that Warden Minor directly participated in any unconstitutional conduct. He does not claim, for instance, that Warden Minor was present when Officer Gittemeier deployed mace. Plaintiff also does not allege that Warden Minor failed to train or supervise his subordinates. Indeed, plaintiff's sole allegation as to Warden Minor states that "Warden Dean Minor failed to take corrective actions." (Doc. 1 at 8). This statement does not provide any indication of what action Minor failed to take. Moreover, it fails to allege that Warden Minor had notice of any unconstitutional acts or, that having notice, he was deliberately indifferent to or authorized those acts. Rather, plaintiff's vague allegation against defendant Minor amounts to a legal conclusion, which the Court is allowed to ignore. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true … the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Accordingly, plaintiff's claims against defendant Minor in his individual capacity must be dismissed.

C. **Defendant Gittemeier**

Plaintiff's excessive force claim against defendant Gittemeier must be dismissed. The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Plaintiff alleges that Officer Gittemeier approached his cell on February 7, 2017, and ordered him to move. (Doc. 1 at 7). Plaintiff did not move, claiming he was incoherent. He states that a nurse did not check on him to determine whether he was coherent. However, in his IRR, attached to the complaint and incorporated by reference, plaintiff does acknowledge a nurse checking on him, but failing to specifically check his blood sugar. Plaintiff states that Officer Gittemeier warned him that mace would be applied if he did not move. (Doc. 1 at 8). Plaintiff claims he "still was not able to move." At that point, Officer Gittemeier applied mace to plaintiff's facial area, and plaintiff "immediately got up."

Taking all of these factual allegations as true, plaintiff has not stated a claim of excessive force. As noted above, a prison guard can be liable for the use of excessive force if the force is "completely unjustified," that is, the force was used "maliciously and sadistically." *See Ward*, 844 F.3d at 721. Plaintiff's allegations concede that Officer Gittemeier had a proper penal purpose in using force. Specifically, the allegations state that Officer Gittemeier had been given an order to transfer plaintiff from one housing unit to another. When Officer Gittemeier confronted him, plaintiff acknowledges that Gittemeier told him to move. Further, Officer

11

Gittemeier gave him a warning that pepper spray would be applied if he did not cooperate. These allegations do not demonstrate that Officer Gittemeier's actions were "completely unjustified." Further, these allegations do not lend themselves to an inference that Officer Gittemeier was acting with malice or sadism.

Plaintiff bases his claim on his contention that he was "not coherent," that his blood sugar was low, that Officer Gittemeier did not have a nurse check him, and that he was unable to move. Plaintiff's allegations in the complaint and the accompanying attachments are contradictory on this point. In his statement of claim, plaintiff asserts that Officer Gittemeier did not have a nurse determine his level of coherency. In the IRR he filed with the institution, however, he states that the nurse checked on him but did not test his blood sugar. Further, in his statement of claim, plaintiff alleges that he was "absolutely unable to move." However, plaintiff also alleges that as soon as Officer Gittemeier applied pepper spray, he "immediately got up" and was escorted to administrative segregation. Moreover, in his IRR, plaintiff wrote that "I don't even know what all happen[e]d[.]"

Notwithstanding these contradictions, plaintiff has not stated an excessive force claim even if the Court accepts that Officer Gittemeier did not have a nurse check on plaintiff before ordering him to move. The reason, as discussed above, is that plaintiff fails to allege that Officer Gittemeier acted sadistically and maliciously. He does not allege that Officer Gittemeier used mace without any provocation. To the contrary, plaintiff alleges that Officer Gittemeier had been directed to move plaintiff to a different housing unit, gave plaintiff orders to move, and warned plaintiff before applying force. Once Officer Gittemeier deployed the pepper spray, plaintiff states that he was escorted immediately to administrative segregation. The reasonable inference from the facts as alleged is that Officer Gittemeier used the amount of force necessary

12

to get plaintiff to comply with directions. Moreover, plaintiff does not allege any facts tending to show that Officer Gittemeier knew plaintiff was suffering from low blood sugar and was unable to respond to or obey verbal commands. For these reasons, plaintiff's excessive force claim against defendant Gittemeier in his individual capacity must be dismissed.

### D. Defendant Robinson

Plaintiff's failure to intervene claim against defendant Robinson must be dismissed. The Eighth Amendment imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). As such, under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer … was using excessive force and otherwise was unlawfully punishing the prisoner"); and *Buckner*, 983 F.2d at 121-22 (determining that state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer). "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

Plaintiff alleges that Officer Robinson "was standing in the Rotunda at the time of the incident supporting defendant Gittemeier's attack on plaintiff," making "her just as guilty as defendant Gittemeier because she outright refused to stop" him.

This is insufficient to state a claim for failure to intervene. First, as noted above, plaintiff has not sufficiently alleged that Officer Gittemeier used excessive force against him. Without a proper allegation of a constitutional violation against Officer Gittemeier, Officer Robinson does not have a duty to intervene. *See Putnam*, 639 F.2d at 423-24 (stating that the defendant could

13

not be responsible for failing to intervene while his superior was hitting the plaintiff if the superior did not violate the plaintiff's rights). Second, plaintiff's allegations against Officer Robinson are too vague and conclusory to state a claim, and fail to delineate exactly what Officer Robinson did or did not do. Plaintiff claims that Officer Robinson was standing in the Rotunda, but fails to state the relevance of that positioning. That is, he does not indicate Officer Robinson's actual location in relation to the plaintiff. Plaintiff also does not allege how much of the incident Officer Robinson saw, how quickly she would have been able to respond, or how much time she had to intervene before the incident was over. Due to these deficiencies, plaintiff's failure to intervene claim against defendant Robinson must be dismissed.

### E. Deliberate Indifference Claims

Plaintiff's claims regarding his denial of access to medical care must be dismissed. The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

Proving deliberate indifference requires a showing that a "medical provider knew of and disregarded a serious medical need." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). A showing of deliberate indifference requires more than a mere

disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Whether a prison official has been "deliberately indifferent requires both an objective and a subjective analysis." *Hall v. Ramsey Cty.*, 801 F.3d 912, 920 (8th Cir. 2015). Under the objective prong, the plaintiff must establish that he suffered from an objectively serious medical need, while under the subjective prong, he or she must show that a prison official actually knew of but disregarded the plaintiff's serious medical need. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). In order to meet the objective component of this standard, the complaint must plead facts sufficient to demonstrate that plaintiff suffered from an objectively serious medical need, meaning one that has been diagnosed by a physician as requiring treatment or that is so obvious even a layperson would recognize the need for a doctor. *See Barton*, 820 F.3d at 964.

Plaintiff's complaint is deficient for two reasons. First, in making his medical care claims, plaintiff refers generally to the defendants as a group, without naming any one person or persons as being accountable. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Here, plaintiff's pleadings fail to assert a causal link between an individual defendant and a constitutional violation. Instead, defendants Minor, Gittemeier, and Robinson are lumped together, without any indication of each person's direct responsibility in allegedly depriving plaintiff of his rights. Plaintiff's allegations do not make clear what each particular defendant is alleged to have done, or what they allegedly failed to do.

Second, plaintiff does not properly allege an objectively serious medical need. Rather, plaintiff merely states that following the incident in which mace was applied to his facial area,[4] "the defendants outright refused medical assessment and treatment." Plaintiff's factual recitation does not demonstrate that the application of pepper spray to his face constituted an objectively serious medical need. For example, he states that defendants refused treatment of his eyes, but does not explain what injuries he suffered, such as burning, swelling, or blurred or lost vision. He does not allege that the application of pepper spray made it difficult for him to breathe. He does not even allege that the application of pepper spray caused him pain. Certainly, he does not assert that the pepper spray caused any complications with his diabetic condition.

Whether an objectively serious medical need exists is based on attendant circumstances. *See Barton*, 820 F.3d at 965. Nothing in the complaint describes any circumstances from which it can be deduced that prison officials disregarded a serious medical need. Instead, plaintiff seems to rely on the Court to fill in factual gaps and make factual assumptions. The Court, however, is not required to assume facts that are not alleged. *See Stone*, 364 F.3d at 914-15. Accordingly, for these reasons, plaintiff's deliberate indifference claims must be dismissed.

**F. Disciplinary Hearing Claims**

Plaintiff's claims regarding the constitutionality of his disciplinary hearing must be dismissed. As previously stated, in order to impose liability under § 1983, there must be "a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell*, 909 F.2d at 1208. Plaintiff contends that his constitutional rights were violated when he was denied the ability to call witnesses and present evidence at his disciplinary hearing, and when he was

---

[4]Plaintiff notes in his complaint that he is a diabetic, and alleges that his low blood sugar made him incoherent. However, there is no indication that he is asserting a denial of medical care based on his diabetes.

taken to administrative segregation without cause. He does not, however, provide factual allegations linking any of the individual defendants to this purported violation. Instead, plaintiff refers vaguely to "defendants" as a group. Moreover, plaintiff fails to assert the direct responsibility of each defendant, relying instead on generalizations and conclusory statements. This is insufficient to state a claim. Accordingly, plaintiff's claims regarding his disciplinary hearing must be dismissed.

### G. Plaintiff's State Law Claims

Plaintiff asserts that his factual allegations also constitute state law violations. Because plaintiff's federal claims are being dismissed, the Court declines to exercise jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis is **GRANTED**. [Doc. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $69.27 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim and/or because it is legally frivolous subject to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over any additional state law claims brought by plaintiff pursuant to 28 U.S.C. § 1367(c), and will dismiss the same without prejudice.

A separate order of dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  10th  day of October, 2018.